IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 19-cv-02297-DDD

KAREN L. KRUMANOCKER,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

___

**ORDER AFFIRMING DECISION OF
ADMINISTRATIVE LAW JUDGE**

___

Plaintiff Karen L. Krumanocker brought this action seeking judicial review of an October 18, 2018 determination by an Administrative Law Judge ("ALJ") that she is not entitled to benefits under the the Social Security Act because she was not disabled and was, in fact, able to perform light work, with limitations, in the national economy. *See* 42 U.S.C. §§ 405(g). The matter is ripe for review. (*See* Docs. 11, 15, 16, 17.) The ALJ's determinations were supported by substantial evidence. The decision is therefore **AFFIRMED**.

**LEGAL STANDARDS**

**A. Entitlement to Disability Insurance Benefits**

To obtain disability insurance benefits under the Act, a claimant must meet the insured status requirements, be younger than 65 years of age, file an application for a period of disability, and have a "disability"

within the meaning of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The disability must also have begun before expiration of the disability-insured status. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983). A person has a disability

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). To qualify for benefits, the disabling impairment must last—or be expected to last—at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002). Evaluating the existence of a disability is a five-step, sequential process that ends at any point at which the claimant is found not disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (citation omitted).

**First**, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). **Second**, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). **Third**, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id.* at § 404.1520(d). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. *Id.* at § 404.1520(e). **Fourth**, the claimant must show that the "impairment prevents [him or her]

from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. § 404.1520(f). ***Fifth***, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987) (citation omitted); *see also* 20 C.F.R. § 404.1520(g).

### B. Standard of Review by a District Court

When reviewing disability insurance benefits denials, district courts decide only whether "substantial evidence" supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A district court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," but will "not reweigh the evidence or retry the case." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). And courts may not substitute their judgment for that of the agency. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). Any fact, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY AND ALLEGED IMPAIRMENTS

On October 29, 2012, Ms. Krumanocker filed a claim for supplemental security income benefits. On November 14, 2013, an ALJ found that she had not been under a disability. (AR 377–91.) The Appeals Counsel denied her review, and Ms. Krumanocker appealed to this Court, which vacated the denial and remanded for further proceedings. (AR 395–419.) The Court was not impressed with the ALJ's "conclusory" and "relatively brief" assessment of Ms. Krumanocker's alleged mental impairments, which failed to reference the opinion of Dr. Gayle Frommelt, Ph.D. (AR 417–18.)

On remand, the ALJ rendered another unfavorable decision. (AR 333–47.) Ms. Krumanocker had alleged disability of several types, but only two are raised here: (A) interstitial cystitis ("IC") and (B) mental impairments. (*See* Doc. 15, at 11–25.)

### A. IC

On January 12, 2013, Ms. Krumanocker reported to Dr. Adam Summerlin, M.D., that she had pelvic pain and had been told she has IC. She, at that time, stated that she had had bladder infusions in the past, though none recently, and that when she stays on an IC diet her symptoms are relatively minimal. But when she has flares, she is "in the bathroom every 10 minutes to pee." (AR 268.) Dr. Summerlin concluded that Ms. Krumanocker could stand, walk, and sit for up to six hours each; could carry fifty pounds occasionally and twenty-five pounds frequently; and had no workplace limitations. (AR 270–21.)

In September 2014, Ms. Krumanocker was seen for a cystoscopy at Urology Consultants. Dr. Richard Brownrigg, M.D., noted that she denied having urine retention, painful urination, or urinary frequency.

(AR 920.) She was told to follow up. It's unclear whether she did, but she did go to the emergency room several days later, reporting abdominal pain for the five preceding days. (AR 758.) She again reported IC-related bladder pain in October 2014 and January 2015. (AR 1103, 1109.)

On November 1, 2017, Ms. Krumanocker returned to Urology Consultants, where she was seen by Dr. Alan Bickel, M.D., for an instillation, a form of bladder irrigation. (AR 917–18.) On March 29, 2018, she reported increasing episodes of incontinence. (AR 1193.) On June 4, 2018, Dr. Bickel reported that Ms. Krumanocker had chronic IC, had abdominal pain that takes a while to go away, and was "getting bladder treatments that have helped some." (AR 1206–07.) He said Ms. Krumanocker must urinate frequently, four to five times per day, and her symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks. (AR 1207.) Dr. Bickel stated these impairments had been at that severity level since June 1, 2017. (AR 1208.)

The ALJ, reviewing the record, found that Ms. Krumanocker had not sought regular medical treatment for this condition and had not reported significant ongoing symptoms to her medical treatment providers. The ALJ gave Dr. Bickel's opinion "little weight" because though it "appears to [be] rendered by a treating physician," [] "the opinion is inconsistent with the claimant's many normal exam findings and no record of chronic incontinence or pain." The ALJ, therefore, did not conclude that Ms. Krumanocker's IC was a severe impairment at step two. (AR 339.)

### B. Mental Impairments

In April 2012, Plaintiff told her primary care provider, Jesse Steffl, P.A., that she was depressed and wanted to see a counselor. (AR

231.) She saw Elizabeth Richards, a licensed social worker, reporting a long history of low-level depression and posttraumatic stress disorder symptoms after the murder of her niece, the daughter of her estranged brother. (AR 282). She was diagnosed with PTSD, dysthymia, and bereavement. (AR 284.) Ms. Krumocker followed up once, in October 2012. (AR 280.)

In December 2012, Ms. Krumanocker was examined by psychologist Richard Madsen, Ph.D. She reported pain, which caused stress. As a result, she reported she slept a lot, isolated, and had panic attacks when she was in crowds. (AR 259.) On examination, she was anxious, her thoughts appeared racing, and her speech was excessive, but her "thought content is logical and relevant." (AR 261–62.) She was able to count from one to forty by threes and recall five of five items immediately (but only two of five after five minutes). She was also able to perform various mathematical calculations, although her "ability to do arithmetic functions in her head is impaired" and her "level of intellectual functioning is probably in the low average to borderline range." Her "pace was fast." (AR 262.) Dr. Madsen diagnosed dysthymia, PTSD, panic disorder, and somatization and opined that her impairments interfered with her ability to perform work activities. (AR 263.)

Also in December 2012, Dr. Gayle Frommelt, Ph.D., a state agency psychologist, reviewed the record, including Dr. Madsen's report, and opined Plaintiff could perform work needing "little or no judgment, involving only simple duties that could be learned on the job in a short period of time (up to a month[)]. She can manage social interactions that are not frequent or prolonged." (AR 65.) The ALJ gave Dr. Frommelt's opinion "moderate weight." (AR 344.)

In May 2015, Ms. Krumanocker began mental health treatment at Pueblo Community Health Center, where she was diagnosed with moderate depression and generalized anxiety disorder. (AR 900, 907.) She attended group and individual therapy. (AR 886, 888, 890, 896, 898.) Her mental status examinations were normal, except for an anxious or depressed mood and anxious or preoccupied thought content. (AR 868, 871, 874, 877, 883.) By June 2016, her therapist began noting a normal (euthymic) mood, normal perception, normal thought content, normal cognition, and normal insight, but impaired judgment. (AR 850–51, 853–54, 856–57, 859–60, 863, 866.)

The ALJ found, at steps two and three, that Ms. Krumanocker's anxiety disorder, affective disorder, and somatoform disorder were severe impairments, but that they did not meet the severity requirements of Listings 12.04 or 12.06 to conclusively establish disability.[1] (AR 338–41.) At step four, the ALJ determined that she had the residual functional capacity to perform light work. (AR 341–45.)

## DISCUSSION

The ALJ found, based on the foregoing, that Ms. Krumanocker was not disabled. Ms. Krumanocker argues that the ALJ did not have valid reasons for (A) rejecting Dr. Bickel's opinions and (B) failing to follow all of Dr. Frommelt's mental limitations. Because Ms.

---

[1] Under both listings, the claimant must have an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember, or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; 4. Adapt or manage oneself." Listings 12.04(B) & 12.06(B) (with punctuation alterations).

7

Krumanocker's claim was filed before March 27, 2017, the ALJ was required to evaluate opinion evidence as established by 20 C.F.R. § 416.927.

### A. Dr. Bickel

The ALJ gave Dr. Bickel's conclusions little weight because the ALJ viewed them as inconsistent with Ms. Krumanocker's many normal exam findings and no record of chronic incontinence or pain. According to Ms. Krumanocker, the ALJ's failure to recognize any of the limitations reported by Dr. Bickel demonstrates that the doctor's opinions were not afforded little weight, as the ALJ purported to give them, but no weight at all. She says there are no opinions in the record that contradict Dr. Bickel's and that normal exam findings should be expected in a case involving IC. And were any findings to be construed as contradictory to Dr. Bickel's, she argues, his opinion should have been afforded less than controlling weight, 20 C.F.R. § 416.927(c)(2), but not disregarded altogether. *See Soc. Sec. Ruling, Ssr 15-1p; Titles II & Xvi: Evaluating Cases Involving Interstitial Cystitis (Ic)*, SSR 15-1P (S.S.A. Mar. 18, 2015) ("We generally will rely on the judgment of a licensed physician who has made a diagnosis of IC. . . . [But w]e will consider conflicting medical evidence in accordance with our rules.").

Ms. Krumanocker's position is not consistent with the ALJ's consideration of the evidence, including the contradictory medical evidence she fails to presently acknowledge. The ALJ did not doubt that she had IC or that she had, on occasion, experienced abdominal pain. But, as the Commissioner correctly notes, the question for the ALJ was what functional limitations her IC imposed, and whether her IC amounted to a severe impairment. Dr. Summerlin specifically reported that Ms. Krumanocker's IC symptoms were relatively minimal and did not interfere

8

with her ability to work. Ms. Krumanocker herself denied to Dr. Brownrigg that she had urine retention, painful urination, or urinary frequency. Even Dr. Bickel acknowledged that Ms. Krumanocker's treatments were helping. As Ms. Krumanocker says, an "ALJ may reject a physician's opinion 'only on the basis of contradictory medical evidence." (Doc. 17, at 6 (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)). But the ALJ here did, in fact, discount Dr. Bickel's ultimate determination based on conflicting medical evidence. It was therefore not improper to find that Ms. Krumanocker's IC was not a severe impairment.

**B. Dr. Frommelt**

The Court previously remanded this case based on the ALJ's failure to reference Dr. Frommelt's opinion. This time, the ALJ discussed Dr. Frommelt's opinion at length and gave it moderate weight. Ms. Krumanocker takes no issue with the weight the ALJ gave to the doctor, but with the ALJ's decision to adopt only some of the doctor's limitations in determining her residual functional capacity.

Specifically, she first reports that Dr. Frommelt concluded she had moderate social interaction limitations; she therefore fails to see why the ALJ expressed limitations only in interacting with the general public and does not extend to supervisors and coworkers. Ms. Krumanocker only selectively reports from the record however. Dr. Frommelt rated her "ability to interact appropriately with the general public" as "moderately limited"[2] and further explained that she could perform work "needing little or no judgment, involving simple duties which can be learned on the job in a short period of time" and "she can manage

---

[2] This limitation was entered in a section headed "Rate the individual's social interaction limitations." (AR 65.)

social interaction that are not frequent or prolonged." As the Commissioner argues, while Dr. Frommelt's opinion is susceptible to more than one possible interpretation, the ALJ's interpretation—that Dr. Frommelt meant to express a limitation of only social interaction—is reasonable and therefore must be affirmed under the substantial evidence standard of review. *See Lax*, 489 F.3d at 1084 (noting the court "may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo" (internal quotation omitted)).

Ms. Krumanocker also argues that the ALJ did not account for Dr. Frommelt's conclusion that Ms. Krumanocker was "moderately limited" in her "ability to complete a normal workday and workweek without interruption" and "to perform at a consistent pace without an unreasonable number and length of rest periods." But the ALJ found that she would be limited to light work and no complex tasks. And it is established in the Tenth Circuit that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity," *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), and can account for "moderate concentration, persistence, and pace problems . . . by limiting [the claimant] to unskilled work." *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's]."). Based on this authority, the ALJ's residual functional capacity finding is consistent with the law and supported by substantial evidence.

## CONCLUSION

The decision of the ALJ is **AFFIRMED**.

DATED: April 2, 2020.

BY THE COURT:

_____
Daniel D. Domenico
United States District Judge